# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| TIMOTHY MICHAEL BRANDON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> T. WILLIAMS, Warden, Coastal ) <br> State Prison, *et al.* ) <br> ) <br> Defendants. ) | Case No. CV410-183 |

## ORDER

On a summer day inside the Coastal State Prison's gym, Timothy Michael Brandon sat on the floor talking to another inmate when inmate Victor Simmons suddenly beat him with a metal baseball bat. Doc. 1 at 6. By the time prison guards intervened, Brandon suffered "permanent nerve damage on [his] face, facial disfigurement, [and] dental disfigurement. [He remains] in constant pain[,] which only worsens with cold weather. [He] also suffers from severe paranoia and nightmares that [he] experiences frequently[,] all of which stems from this one attack." *Id.*

He brought this 42 U.S.C. § 1983 action because he

> feel[s] that each of the following person[s] are responsible for violating [his] constitutional rights for lack of security and protection which could have been prevented had a little more attention been applied[:] (1) Superintendent/Warden Thomas Ammons. Employed at Coastal State Prison. He assumed the previous warden's duties right after the attack. (2) Deputy Warden of Security James Deal. Employed at Coastal State Prison during the attack. (3) Deputy Warden of Care and Treatment Gregory Thomas. Coastal State Prison. (4) Unit Manager Charles Wilcox. Coastal State Prison. (5) Athletic Director Cynthia Rivers. Coastal State Prison.

Doc. 1 at 6. Other than listing witnesses, *id.* at 7, that was the totality of Brandon's initial *pro se* complaint. He says he exhausted his administrative remedies under 42 U.S.C. § 1997e(a), doc. 14 at 2 ¶ IV(c), and he certainly has sketched out the makings of a claim,[1] but the Court advised him in an earlier review that it was deficient. Doc. 13 at 2 n. 1 (applying 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c)(2)). Brandon had reached only the Eighth Amendment's baseline:

---

[1] Decades ago another court ruled that

> [i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit. It is on this theory that state prison personnel are sometimes held liable under section 1983 for the violence of one prison inmate against another. *See, e.g., Spence v. Staras*, 507 F.2d 554, 557 (7th Cir. 1974).

*Bowers v. De Vito*, 686 F.2d 616, 618 (7th Cir. 1982).

> Prison officials "must provide humane conditions of confinement; [they] must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)). "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam) (quotations and alterations omitted).

*Moulds v. Bullard*, 345 F. App'x 387, 391 (11th Cir. 2009); doc. 13 at 2-3.

But for a failure-to-protect claim, Brandon also

> must allege that he endured conditions "posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Additionally, [each] correctional officer who is alleged to violate[d] the Eighth Amendment must have demonstrated "deliberate indifference." *Id.* at 835. Prison officials exhibit deliberate indifference when they know of, and disregard, an excessive risk to the inmate's safety. *Id.* Therefore, negligence, or a lack of due care under the circumstances, is insufficient to support a claim that the defendants failed to protect the prisoner. *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S. Ct. 668, 88 L.Ed.2d 677 (1986). An officer has a duty to take reasonable steps to prevent a victim from another officer's use of excessive force, but "an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002).

*Jones v. Luzerne County Corr. Facility*, 2010 WL 3338835 at *5 (M.D. Pa. Aug. 23, 2010); *Robinson v. Houston County*, 2010 WL 2464901 at * 6 (M.D. Ga. Jun. 24, 2010); doc. 13 at 3.

Inmates like Brandon typically plead a situational or background context, if not a specific policy, underlying their claim's causation element. *See Moulds* 345 F. App'x at 391 ("[A] substantial risk to a prisoner's safety may arise not only out of his individual situation, but out of an environment of longstanding and pervasive attacks to which all prisoners in his situation are exposed, and it may come from single or multiple sources. *See Farmer*, 511 U.S. at 842-43, 114 S. Ct. 1970.")); *Franklin v. Tift*, 2010 WL 2609368 at * 2-3 (N.D. Fla. May 27, 2010).[2] Yet Brandon initially failed to allege that, when he was attacked, there

---

[2] The case law bears examples, such as

> a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Harper v. Lawrence Cty, Al.*, 592 F.3d 1227, 1236 (11th Cir. 2010) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *see also Duff v. Steub*, 378 F. App'x 868, 871 (11th Cir. 2010) (state pretrial detainee who suffered ongoing urinary problems failed to allege sufficient facts to establish that state prison's chief health official was deliberately indifferent to detainee's serious medical needs, and thus health official was not liable under Fourteenth Amendment on § 1983 deliberate indifference claim; detainee's complaint did not allege that chief health official personally participated in alleged delay or denial of detainee's medical treatment, that official had subjective knowledge of risk of serious harm to detainee and disregarded that risk, or that causal connection existed between detainee's medical care and official's supervisory actions).

was a substantial risk to his safety *and* that each defendant knew about it but knowingly or deliberately disregarded it.³ Pointing to people in charge and insisting that that alone made them liable (hence, a negligence theory) was not enough. Doc. 13 at 5. Thus, Brandon was required to plead facts showing more than a defendant's mere knowledge that, for example, the unsecured baseball bats here were tantamount to a match about to be lit inside a powder keg. Instead, it was necessary for him to plead facts showing that the defendant drew the inference "that a substantial risk of serious harm exists." *Johnson v. Smith*, 354 F. App'x 516, 517 (2d. Cir. 2009) (cited in *Barreto v. County of Suffolk*, 2010 WL 5437211 at * 5 (E.D.N.Y. Dec. 22, 2010) (dismissing guard from failure-

---

³ Otherwise, courts can dismiss such cases for want of an essential element. *Compare Gross v. White*, 340 F. App'x 527, 530-31 (11th Cir. 2009) (state inmate failed to state § 1983 claim against sheriff in his supervisory capacity, warranting dismissal of claim pursuant to inmate complaint screening statute, where inmate, who was assaulted by a fellow inmate while being held as pretrial detainee in county jail, asserted that the jail's rules and regulations required "red dot" violence-prone inmates to be separated from general inmate population and that unnamed deputies broke those rules by placing him in cell with "red dot" inmate who was known to escape his restraints and to be violent, but did not allege that the sheriff directed anyone to break rules or knew that anyone would do so) *with Harper*, 592 F.3d at 1236 (complaint's specific allegations that sheriff and jail administrators who were responsible for management and administration of jail had customs or policies of improperly screening inmates for alcohol withdrawal and improperly handling inmates addicted to alcohol or drugs, together with its factual detail concerning prior similar incident, satisfied pleading standards for stating § 1983 claim of deliberate indifference to pretrial detainee's serious medical needs under the due process clause based on supervisor liability related to detainee's death from alcohol withdrawal while in county jail).

to-protect case where plaintiff alleged only that the guard "was not present at the tier" when he should have been, and that the "assault could have been prevented if there was a Corrections officer properly overseeing the tier"; plaintiff averred only that the corrections staff were generally aware of his attacker's disciplinary violations, but otherwise pled no facts to suggest that the defendant had "any subjective awareness that his absence posed a substantial risk of serious harm.")).

The Court therefore gave him a chance to cure his complaint, doc. 13 at 7-8, and he has taken it. Doc. 14. His amended complaint[4] alleges that prison management dealt with Coastal State Prison (CSP) understaffing by herding 200 inmates into a gym (which is apparently inside "N-Bldg.") that included unattended baseball bats, while the guards remained off in a limited-view adjacent room socializing and drinking coffee. Doc. 14 at 2-3. It took the guards several minutes to enter the gym and halt plaintiff's beating. *Id.* at 3 ¶ 8. This followed a history where "there were often fights and unmanageable incidents with

---

[4] On his amended complaint Brandon has captioned the "Coastal State Prison" as the lead defendant, doc. 14 at 1, but in the body of his complaint he names as defendants only five *individuals, id.* at 1 ¶ 1, so the Court has amended the caption accordingly. The Clerk shall amend the docket to conform, and all subsequent filings shall also conform. Note, too, that plaintiff no longer references "Thomas Ammons" but instead identifies a "T. ___ Williams" as the 2008 CSP warden. Doc. 14 at 1 ¶ 1.

these prisoners. . . . A close review of the records books past-present & future to this said date of incident will show." *Id.* at 2 ¶ 6.

Brandon thus insists that Warden "T. Williams" (he evidently does not know the warden's first name) is liable because he

> is responsible for over-seeing; safety security and procedures of the every day duties of the whole prison. [He] also, does daily inspections of the prison ... which includes going to N-Bldg. and the gym. Subsequently, giving [him] knowledge that [he], one; had a shortness of staff problem, and two; defendant Wilcox was on a often basis ordering 200 mental health inmates to stay in the gym area for four hours, and three; saw the metal soft-ball bats unsecured and unattended...Whereas, *14. Claim One*: Defendant Williams, in his individual capacity as warden of (CSP) "doing these inspections"; had or should have had reasonable carnal knowledge that [his] unit manager, Defendant Wilcox, was forcing these said mental health prisoners to stay in the gym area for four hours on a routinely bases; Thus, subsequently, causing this said attack of plaintiff and the injuries thereof. *15. Claim Two*: Defendant Williams knew or should have known," due to [his] inspection walks", of the metal soft-ball bats not secured pursuant to the Administrative Codes (ADC), and the Administration Procedure Act (SOP/LOP) mandated by the GA. Dept. of Corr. It's clear, warden Williams could careless of the safety of plaintiff.

Doc. 14 at 3 ¶¶ 13-15 (in original, unedited form); *see also id.* at 1 ¶ 1.

Boiled down, Brandon alleges that CSP unit manager Charles Wilcox routinely ordered "gym herding" of mental health inmates due to a staff shortage. *Id.* at 3 ¶14, 4 ¶ 16. Given this routine, and Williams's own inspections, plaintiff insists that Williams clearly knew about the

7

herding. Moreover, Williams actually "saw the metal soft-ball bats unsecured and unattended...." *Id.* at 3 ¶ 13.

Wilcox, for that matter, is named as a co-defendant because he exercised his authority to order the herding, so he knew of the ensuing "powder-keg" risk. *Id.* at 4 ¶¶ 16-17. Finally, Brandon also names as defendants three CSP "athletic/security officers" -- Cynthia Rivers, Mr. Summers and Ms. Prince -- because (a) they failed in their assigned duty to secure the baseball bats that day; and (b) they socialized in a side room while Simmons brutally beat Brandon with a bat he, but for that indifference, would not have possessed. *Id.* ¶¶ 18-20.

Applying the above standards along with those set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), as clarified in *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937 (2009), this is a reasonably close question. Fights frequently occur in prisons, so it is not enough to generically allege that because there have been "a lot of past fights" (Brandon cites no particular number, incidentally) a particular prison official therefore was subjectively aware of a substantial risk of a *particular* attack.

On the other hand, assuming (as the Court must) that Brandon's factual allegations are true,[5] common sense would inform even a newly trained guard that herding 200 mental-health inmates into a gym and leaving them with a bunch of baseball bats *does* equate to handing a match to a pyromaniac inside of a powder keg. And Brandon does allege a "herding history," though he does not say that it routinely involved leaving unguarded baseball bats in the gym. Thus, he has alleged the routine formation of a powder keg, and a one-time tossing of a match into it.

That is not enough to hold Wilcox liable, since no facts show that he knew about and deliberately disregarded the baseball bats that fateful day. In contrast, Rivers, Summers, and Prince are all plausibly alleged to have been subjectively aware of the "powder keg" risk (herding unstable inmates plus baseball bats) yet deliberately ignored it while drinking

---

[5] "*Twombly* and *Iqbal* do not reject the principle that when a complaint is dismissed for failure to state a claim the reviewing court is to assume that the factual allegations made in the complaint (unless fantastic, or contradicted in the complaint itself or in documents attached to it) are true. But the complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote." *Atkins v. City of Chicago*, ___ F.3d ___, 2011 WL 206155 at * 6 (7th Cir. Jan. 25, 2011).

coffee in a side room. Hence, they are properly retained in the case for now.

Warden Williams is more problematic. The pivotal allegation here, however, is that the gym-herding was routine (discovery may reveal if it was routine enough to impute notice to him) *and* that Williams himself saw the exposed baseball bats. "[W]hen facts support an inference that the supervisor . . . knew that the subordinates would act unlawfully and failed to stop them from doing so," *Harper*, 592 F.3d at 1236, the pleading threshold has been crossed. Brandon has just barely alleged that here, so Williams shall also remain in this case.

Fairly read, plaintiff's amended complaint alleges that defentants Williams, Rivers, Summers, and Prince were consciously aware of a substantial risk of harm to his safety and ignored that risk. Thus the Clerk is **DIRECTED** to forward Brandon's complaint, as amended, along with a copy of this Order to the United States Marshal for service upon these defendants. The Clerk shall also amend the caption as noted *supra*, n. 4. Finally, Brandon's case against defendant Charles Wilcox should be **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this 19𝑇𝐻 day of May, 2011.

/s/ M. Smitt
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA